**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AARON BRIAN SANDS,

      Petitioner,

v.                                  Case No: 8:13-cv-2570-T-30TGW

UNITED STATES OF AMERICA,

      Respondent.

_____

## ORDER

THIS CAUSE comes before the Court upon Aaron Brian Sands' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. #1), his Memorandum of Law (Dkt. #2), and the Government's Response (Dkt. #10).   The Court having reviewed the pleadings, arguments, and record, concludes that the petition is due to be denied.

Sands pled guilty to one count of receiving child pornography and one count of knowingly possessing child pornography.   He was sentenced to 180 months imprisonment on count one and 120 months on count two with the terms running concurrently.   Sands appealed his judgment and sentence arguing that the Court erred in grouping his offenses which gave a base offense level of 22 instead of 18.   On July 3, 2012, the Eleventh Circuit affirmed.   *United States v. Sands*, 480 Fed. App'x. 966 (11th Cir. 2012).

On October 4, 2013, Sands timely filed the instant petition together with a supporting memorandum, raising three claims of ineffective assistance of counsel:

**Ground One:**     Sands was denied assistance of counsel at a critical stage when the Court summarily denied his motion for substitution of counsel.

**Ground Two:**     Counsel was ineffective for failing to communicate plea offers; to explore plea offers; to negotiate a plea; and to explain to Mr. Sands his options.

**Ground Three:**   Counsel was ineffective during the appellate process because he was not conflict-free.

## Standard of Review

The law regarding ineffective assistance of counsel claims is well settled.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

 *Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A]

court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

**Ground One:**   **Sands was denied assistance of counsel at a critical stage when the Court summarily denied his motion for substitution of counsel.**

It is not entirely clear from Sands' argument whether he is asserting an error on the part of the trial court in denying the motion for Mr. Hall to withdraw as counsel or whether he is contending Mr. Hall was ineffective in his representation.   For example, Sands argues:   "The Sixth Amendment is violated when a court summarily denies a defendant his right to counsel of choice and motion to substitute counsel," citing *United States v. Garrett*, 179 F. 3d 1143 (9th Cir. 1999).   If Sands is claiming trial court error, it should have been raised on direct appeal.   If not, it is waived.   In any event, *Garett* is of no help to Sands.

In *Garrett*, the defendant, who had a court appointed attorney, waited until the day before trial to announce that he had retained a private attorney to represent him, but the

private attorney would need one month to prepare for trial.   The new attorney was not present in court.   The court telephoned the new attorney who confirmed that he had been retained but that he could not proceed to trial the next day.   The court then denied the defendant's motion for a one month continuance.   The defendant then proceeded to trial *pro se*, with the court appointed attorney as stand-by counsel.   He was convicted.   The defendant's subsequent appeal on the grounds that he was not given the attorney of his choice was denied.   The appellate court stated that, while the Sixth Amendment right to counsel is an important one, it does not override the trial court's discretion in denying a last minute request for a continuance.

*Garrett* does not help Sands because:

(1)     it confirms the broad discretion of the trial court in denying a defendant's request for new counsel,

(2)     Garrett was facing trial whereas Sands was facing sentencing (he had already pled guilty), and

(3)     Garrett was seeking to hire his own private lawyer, not receive another court appointed lawyer.

A defendant may hire whatever attorney he chooses, but he does not the right to pick and choose among court appointed attorneys.   *Moore v. U.S.*, 260 F. Supp. 315 (E.D. Mo. 1966), *affirmed* 376 F. 2d 32 (8th Cir. 1967).

Sands' memorandum also seems to assert ineffective assistance of counsel: "(A)ttorney Hall's conduct and representation of Mr. Sands was woefully deficient." Memorandum (Dkt. #2), p. 17.   Sands' counsel, Mr. Hall, filed two separate motions to

4

withdraw, both of which were denied by the Court.   While Sands criticizes Hall's motion to withdraw as not containing sufficient supporting facts, Sands filed his own *pro se* motion for Hall to withdraw setting forth all of Sands' reasons.   (Dkt. #30, criminal case 8:09-cr-591-T-30TGW, in the Middle District of Florida.)   None of the reasons were sufficient to warrant a new court appointed attorney.

As previously noted, Sands did not seek to have Hall withdraw until after he had already pled guilty.   Only sentencing remained.   Hall met with Sands twice after Sands' entry of his guilty plea to prepare for sentencing.   After Hall met with him on July 1, 2010, Sands wrote Hall about their discussion concerning possible downward variances.   Sands seemed satisfied with Hall's representation at that point, and Hall responded by letter, also on July 1, 2010, attaching copies of the Guidelines Sentencing Manual for Sands' review.

In all of his complaints about his lawyer's representation at sentencing and the Court's refusal to appoint another attorney in place of Mr. Hall, Sands never demonstrates how he was prejudiced.   He never states what some other lawyer could have done or would not have done that would have changed Sands' sentence.

Since the petition fails to show either deficient performance or prejudice, this ground fails.

**Ground Two:**          **Counsel was ineffective for failing to communicate plea offers; to explore plea offers; to negotiate a plea; and to explain to Mr. Sands his options.**

In support of ground two, Sands argues:

Mr. Sands maintains that his counsel was ineffective in that he failed to communicate, explore, negotiate and explain any plea offers on his behalf. Attorney Hall's representation of Mr. Sands during the pre-sentencing phase,

> as well as in all phases of litigation, was ineffective and in direct violation of
> the Sixth Amendment.

Memorandum in support (Dkt. #2), p. 19.

Apparently Sands assumes that his counsel failed to attempt to negotiate a plea and, had he done so, the government would have offered to let Sands plead to only one of the two charges. Such failure, by definition, would have occurred before Sands entered his guilty plea. This argument is mere conjecture on Sands' part. First, he does not know if his counsel attempted to negotiate with the government, and second, he does not know if the government would have made an offer, if asked. Speculative claims such as these do not support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F. 2d 1551 (11th Cir. 1991).

Sands is also factually wrong. His counsel did attempt to get the government to allow Sands to plead to only count two, simple possession of child pornography. Hall Affidavit, Exh. 4 to government's response (Dkt. #10), p. 6. Hall explains that the government had a strong case and was not interested in making a plea offer. At the guilty plea hearing, the government stated on the record that it had not made any plea offer:

> THE COURT:        Mr. Sands, in this case, it has been indicated that you
> are prepared to enter a plea of guilty to the two charges in the indictment.
>
> In connection with that matter, it's my responsibility to ask you a number of
> questions.
>
> The purpose of that is to make sure that you are pleading guilty freely and
> voluntarily and with a full understanding of the consequence of pleading
> guilty.
>
> If, as a result of any of the questions that I ask, or anything that comes to
> your mind, you wish to talk with your lawyer, feel free to do that and I'll give

you any opportunity you need to talk to your lawyer as we proceed.

Also, in connection with my question, the clerk will swear you to tell the truth.   If you give a false answer, you could be prosecuted for the crime of perjury for making false statements.

Do you understand that?

THE DEFENDANT:          Yes, I do, Your Honor.

THE COURT:          Madam Clerk?

(Defendant sworn by the Deputy Clerk.)

THE DEFENDANT:          I do.

THE CLERK:          Thank you.   You may be seated.

* * * *

THE COURT:          The Public Defender represents you and Mr. Hall is from that office.   Have you had a full opportunity to discuss this case with him?

(No audible response.)

THE DEFENDANT: (sic)  Well, my next question is, since you paused on that one:   with respect to your decision to plead guilty, do you think you need any more time to discuss that matter with him?

(No audible response.)

THE COURT:          Okay.   And you are having - - you are pausing again.

Here's the bottom line:   I didn't schedule this hearing for this afternoon.   Somebody called and said, hey, we're ready to plead guilty.

So, it isn't me that's pushing this thing.   And if you think you need more time to talk to your lawyer about whether or not to plead guilty; if you think you want more time to think about it, it's fine with me.   I'll give you more time.

MR. HALL:  Judge, he thought you were asking me questions.

THE COURT:          No, I'm talking - -

THE DEFENDANT:          Oh, I'm sorry.

THE COURT:          He's your lawyer.

THE DEFENDANT:          Right.   Okay.

THE COURT:          He's your lawyer, but this routine is to ask you if you've had a full opportunity to discuss this case with him?

THE DEFENDANT:          I have, Your Honor.

THE COURT:          With respect to your decision to plead guilty, do you think you need any more time to discuss that matter with him?

THE DEFENDANT:          No, Your Honor.

THE COURT:          Are you satisfied with the way he has represented you in this case?

THE DEFENDANT:          I have, Your Honor.   I am.

THE COURT:          Is there anything you think he should have done that he did not do in this case?

THE DEFENDANT:          I can't think of anything, Your Honor.

THE COURT:          And, in particular, did he explain the two charges in the indictment to you?

THE DEFENDANT:          Yes, he did, Your Honor.

THE COURT:          And you understand the charges?

THE DEFENDANT:          I do, Your Honor.

THE COURT:          Do you have any questions about them?

THE DEFENDANT:          None.

* * * *

THE COURT:          Was there a plea agreement proffered in this case?

MS. KAISER:          No, Your Honor.

THE COURT:          Okay.   Mr. Sands, are you pleading guilty freely and voluntarily?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:          Has anyone forced you or coerced you in order to get you to plead guilty?

THE DEFENDANT:          No, Your Honor.

THE COURT:          Has anyone promised you anything in order to get you to plead guilty?

THE DEFENDANT:          No, Your Honor.

THE COURT:          Mr. Hall, as far as you know, have any promises been made to obtain a plea of guilty?

MR. HALL:  No promises.

THE COURT:          And, Ms. Kaiser, as far as you know, have any promises been made to obtain a plea of guilty?

MS. KAISER:          No, Your Honor.

Guilty plea transcript (Dkt. #51), criminal case #8:09-cr-591-T-30TGW, Middle District

of Florida, pp. 2-3, 17-19, and 28-29.

Defense counsel cannot force the government to make a plea offer.   Sands has not

shown deficient performance on the part of Mr. Hall nor has he shown prejudice, that the

government would have been forthcoming with a better plea deal had Mr. Hall done

anything more.   Therefore, Sands fails both prongs of *Strickland* and this claim must be

denied.

9

**Ground Three:** **Counsel was ineffective during the appellate process because he was not conflict-free.**

In support of ground three, Sands asserts:

The representation of Mr. Sands by attorney Hall was replete with errors, missteps and ineffectiveness. By assigning attorney Hall as Mr. Sands' appellate counsel, the court created a conflict of interest. Attorney Hall's representation during the appellate process was self-serving as he had no professional (or personal) incentive to effectively represent Mr. Sands during appeal as this would expose the ineffectiveness of his representation of Mr. Sands prior to and during sentencing. If not for the conflict of interest in attorney Hall's representation, the outcome of the appellate process would have been different for Mr. Sands.

Memorandum in support of petition (Dkt. #2), p. 23.

Sands seems to complain that every trial counsel has a built in conflict of interest in representing the same defendant on appeal. As a general proposition, that is incorrect. Sands must point to a specific conflict. Here, Sands says he wanted Hall to dispute the conditions of supervised release at sentencing, but he does not identify any condition that should have been disputed nor does he demonstrate that the Court would have changed a condition if asked. Sands also claims that his attorney had a conflict of interest in regards to "the two improperly prepared motions" to withdraw. Whether the motions were improperly prepared was not an appropriate issue for direct appeal, so Mr. Hall had no conflict. That issue is appropriate for a petition to vacate, Sands in fact raised the issue, and it failed for lack of merit. Therefore, Sands has shown neither deficient performance nor prejudice.

Lastly, this claim is belied by Sands' own letter to his counsel on July 23, 2011, concerning the progress of the appeal. Nowhere in the letter does Sands express any

dissatisfaction with Hall's representation or request any additional issues be raised. Exhibit 4-3, Government's Response (Dkt. #10).

<u>Conclusion</u>

Since each of the claims raised by Sands lacks merit, the petition must be denied.

It is therefore ORDERED AND ADJUDGED that:

1.     Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (Dkt. #1) is DENIED.

2.     The Clerk is to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

3.     The Clerk is directed to terminate from pending status the motion to vacate found at Dkt. #56, in the underlying criminal case, case number 8:09-cr-591-T-30TGW.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL
IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability (COA).   *Id*.   "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED in Tampa, Florida on this 1st day of August, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2013\13-cv-2570 deny 2255.docx